HENRY, Circuit Judge.
Appellant Efrain Caro was indicted on one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a). After an evidentiary hearing, the district court denied Mr. Caro’s motion to suppress evidence obtained following the stop of his vehicle. Mr. Caro subsequently entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress. We exercise jurisdiction under 28 U.S.C. § 1291, vacate the denial of Mr. Caro’s motion to suppress, and remand for further proceedings.[1]
I. BACKGROUND
Trooper Denis Avery of the Utah Highway Patrol was patrolling Interstate 70 in Sevier County, Utah, on the afternoon of March 2, 1999. At about 1:40 PM, Trooper Avery observed a gray Honda Accord, with dark tinted windows, traveling eastbound. He noticed that the windows appeared to be more darkly tinted than Utah law permits. Trooper Avery activated the overhead lights on his patrol car and followed the Honda, which pulled over onto the shoulder of the road.[2]
Trooper Avery approached the car and observed a male driver (Mr. Caro) and a female passenger. Trooper Avery asked for Mr. Caro’s license and registration. The driver’s license was from Iowa and was in Mr. Caro’s name, while the registration was from Nebraska, in the name of Roberto Jimenez. Trooper Avery asked Mr. Caro about the owner of the Honda, and Mr. Caro responded that it belonged to a “friend” whose name was Roberto. However, Mr. Caro was evidently unable to recall Mr. Jimenez’s last name. According to Trooper Avery, Mr. Caro appeared “a little nervous,” avoided eye contact, and was “shaking a little bit when he handed me his paperwork.” Aplt’s App. at 88-89.
Trooper Avery returned to his patrol car to write a warning citation for the window tint violation and to run a check on the license and registration. The check revealed that Mr. Caro’s license was valid, that he did not have any outstanding warrants, and that the car had not been reported stolen. However, even though the car was gray in color, it had been registered as maroon. Trooper Avery testified that the color discrepancy, in concert with Mr. Caro’s nervousness and inability to recall the last name of the registered owner, made him suspect the Honda might have been stolen. Id. at 89.
Trooper Avery then walked back to Mr. Caro’s window. On direct examination, Trooper Avery testified that he briefly engaged Mr. Caro in “small talk about who actually owned the car,” and then asked Mr. Caro if he would get out of the car while Trooper Avery compared the Vehicle Identification Number (VIN) on the door of the Honda to the VIN listed on the registration. Id. at 90. However, on cross examination, Trooper Avery agreed that the videotape of the traffic stop shows an additional event, which he failed to *1243 acknowledge in his earlier testimony. Just before he asked Mr. Caro for permission to check the VIN on the door, Trooper Avery compared the VIN on the vehicle registration to the VIN plate which was visible through the car’s windshield, and determined that they matched. Id. at 112-13.
Mr. Caro exited the vehicle at the trooper’s request. Trooper Avery looked for a VIN on the driver’s door and did not find one, but he did notice several air fresheners hanging from the dashboard and a bottle of air freshener in the console. He testified that the air fresheners made him suspicious the car was transporting controlled substances. He asked Mr. Caro whether there were any drugs in the car, and Mr. Caro said there were none. Trooper Avery then requested permission to search the car, which Mr. Caro granted. Id. at 90-91.
Trooper Avery asked Mr. Caro to open the trunk of the car. Mr. Caro opened the hood of the car, and then the trunk. When Mr. Caro asked if he should shut the hood, Trooper Avery stated that he should not, as the trooper wanted to look for a VIN plate under the hood as well. Mr. Caro and Trooper Avery then walked to the trunk of the car. Trooper Avery testified that it was at this point that he returned Mr. Caro’s license and registration. After looking in the trunk, Trooper Avery walked around to look under the hood. He noticed that the battery looked inappropriately large for that model Honda, and that the brackets holding it in place were brand new. He removed the battery and inspected it. Noticing that the battery’s casing appeared to have been cut apart and then glued back together, Trooper Avery cut it open. Inside, he discovered a smaller battery and two packages wrapped in duct tape. The packages field tested positive for methamphetamine. Id. at 91-96.
The district court held that “from the totality of the evidence presented ... the investigative detention which occurred after the stop was supported by an objectively reasonable suspicion of illegal activity.” . Id. at 59 (Memorandum Decision and Order, filed July 20, 1999). It found that the combination of Mr. Caro’s nervousness, his inability to recall the registrant’s last name, and the discrepancy in the car’s color provided grounds for reasonable suspicion that the car was stolen. It also stated that the presence of air fresheners in the car “aroused in the officer a reasonable suspicion that the vehicle might be carrying narcotics as well as being stolen.” Id. at 60. The district court thus held that Trooper Avery was justified in extending the scope of the vehicle stop beyond the window, tint violation. It also found that the government had adequately proven Mr. Caro’s voluntary consent to the search. Accordingly, the court denied Mr. Caro’s motion to suppress.
II. DISCUSSION
A. Lawfulness Of Detention
When reviewing an order granting or denying a motion to suppress, we accept the district court’s factual findings unless they are clearly erroneous, and we view the evidence in the light most favorable to the district court’s determination. See United States v. Doyle, 129 F.3d 1372, 1375 (10th Cir.1997). “We are mindful that at a hearing on a motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge.” United States v. Fernandez, 18 F.3d 874, 876 (10th Cir.1994). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. United *1244 States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir.1998).
A routine traffic stop is analogous to an investigative detention and is analyzed under the principles stated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir.1995) (en banc). To determine the reasonableness of an investigative detention, we make a dual inquiry. First, we ask “ ‘whether the officer’s action was justified at its inception,’ ” and second, “ ‘whether it was reasonably related in scope to the circumstances which justified the interference in the first place.’ ” Hunnicutt, 135 F.3d at 1348 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). Mr. Caro has not challenged Trooper Avery’s initial stop of the Honda for a window tint violation. We therefore proceed to Mr. Caro’s contention that Trooper Avery exceeded the lawful scope of the detention.
As this court has often stated, an officer conducting a routine traffic stop may request a driver’s license and vehicle registration, run a computer check, and issue a citation. See Hunnicutt, 135 F.3d at 1349. Normally, once the officer has completed these acts, and the driver “has produced a valid license and proof that he is entitled to operate the car, [the driver] must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.” United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir.1994); see also United States v. Mendez, 118 F.3d 1426, 1429 (10th Cir.1997); United States v. Elliott, 107 F.3d 810, 813 (10th Cir.1997). However, further questioning is permissible under two circumstances. First, if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, the officer may detain the driver for questioning unrelated to the purpose of the initial traffic stop. Second, if the traffic stop has become a consensual encounter, the officer may continue to question the driver. Hunnicutt, 135 F.3d at 1349; United States v. Anderson, 114 F.3d 1059, 1064 (10th Cir.1997).
Here, Mr. Caro objects to his continued detention following Trooper Avery’s admitted inspection of the VIN plate located on the dashboard of the Honda. He contends that once Trooper Avery had compared the dashboard VIN to the VIN on the car’s registration, and had determined that they matched, Trooper Avery’s suspicions should have been “sufficiently dispelled such that further detention on the basis that the vehicle [might] be stolen was no longer valid.” Aplt’s Br. at 15. Mr. Caro argues that there was no basis for Trooper Avery to expect that a VIN located inside the car would give him any additional cause to think the car was stolen. He therefore asks us to suppress as unlawful all evidence obtained after Trooper Avery examined the dashboard VIN. In Mr. Caro’s view, but for Trooper Avery’s attempted inspection of a VIN inside the vehicle, the trooper would not have noticed any air fresheners. As a result, there would have been no reasonable suspicion of the presence of controlled substances, and Trooper Avery would have allowed Mr. Caro to proceed on his way. Id. at 14-16.
In contrast, the government presents three reasons why Trooper Avery’s continued detention of Mr. Caro, including his request to look for a VIN on the side panel of the car door, was permissible. First, the government argues that the combination of suspicious factors (the discrepancy in the car’s color, Mr. Caro’s nervousness, and his inability to give the last name of the car’s registrant) was a sufficient basis for reasonable suspicion, and hence continued detention, under cases such as United *1245 States v. Soto, 988 F.2d 1548 (10th Cir.1993), and United States v. Arango, 912 F.2d 441 (10th Cir.1990). Second, the government contends that under New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), Mr. Caro had no reasonable expectation of privacy in a VIN located either on the dashboard or on the door. Third, the government cites case law as well as the testimony of Trooper Avery for the proposition that “the VIN plates on vehicles can be changed,” and that “it would take little effort to replace the VIN plate on the dashboard ... while not taking similar care to remove, replace, or obliterate the VIN ... at other less prominent places on the vehicle.” Aple’s Br. at 12-14.
After reviewing these arguments, we agree that the suspicious circumstances noted by the government may have justified further questioning of Mr. Caro. See Soto, 988 F.2d at 1556 (concluding that a driver’s nervousness and “complete failure to respond” to a question about the alleged owner of the car provided grounds for reasonable suspicion and further questioning). However, it is uncontroverted that Trooper Avery specifically intended, in his initial examination of the car’s interior, to locate an additional VIN. Other than that additional VIN, the government has failed to identify or suggest any information relating to the possible theft of the car that Trooper Avery could have discovered inside the passenger compartment. We must therefore address the question of whether Trooper Avery’s request to search for a VIN on the inside of the car was reasonable.
With respect to the VIN, we think that the government’s arguments on appeal fail to properly heed the holding of the Supreme Court in New York v. Class. According to the government, Class merely holds that neither of the locations in a car in which a VIN plate is customarily located — the dashboard and the doorjamb — is subject to a reasonable expectation of privacy. Class, 475 U.S. at 118-19, 106 S.Ct. 960. However, this particular rule is strongly qualified if read in the context of the opinion as a whole. First, the Supreme Court’s reference to two possible locations for the VIN clearly refers to the fact that the VIN “is located on the left doorjamb in automobiles manufactured before 1969.” Id. at 108, 106 S.Ct. 960. In contrast, in cars manufactured after 1969, the VIN is required to be located within the passenger compartment, and “readable, without moving any part of the vehicle, through the vehicle glazing under daylight lighting conditions” — in other words, on the dashboard. Id. at 111-12, 106 S.Ct. 960 (quoting 49 C.F.R. § 571.115 (1984)); see also 49 C.F.R. § 565.4(f) (2000) (mandating dashboard location for the VIN in passenger cars).
Moreover, the government does not even mention, much less address, that part of the Class opinion which states that “our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it.” Class, 475 U.S. at 119, 106 S.Ct. 960. This court recently cited Class for this very proposition in United States v. Miller, 84 F.3d 1244 (10th Cir.1996), ovemded on other grounds by United States v. Holland, 116 F.3d 1353 (10th Cir.1997). In Miller, we stated that “[i]f the VIN is visible from outside the vehicle, the officer cannot enter the vehicle to read it,” and that “[i]f the VIN is not visible and the driver is inside, the officer must ask the driver to remove any obstruction and allow him to see the VIN.” Id. at 1251 (citing Class, 475 U.S. at 115, 119, 106 S.Ct. 960). Class and Miller thus *1246 distinctly limit the permissible scope of police intrusions aimed at checking a vehicle’s VIN.
Still, the government argues that the presence of an unobscured and apparently accurate VIN on Mr. Caro’s dashboard should not have barred Trooper Avery from checking other locations for an additional VIN, because here, unlike Class, there were facts that suggested Mr. Caro’s car might have been stolen. The government asserts that it is “common” to replace VIN plates on stolen vehicles, and (as noted above) speculates that:
it would take little effort to replace the VIN plate on the dashboard, the most obvious place at which the VIN is displayed, while not taking similar care to remove, replace, or obliterate the VIN on the side door panel, under the hood, or at other less prominent places on the vehicle.
Aple’s Br. at 14. In support of this assertion, the government cites a single case from the Seventh Circuit, United States v. Evans, 27 F.3d 1219 (7th Cir.1994), and testimony by Trooper Avery from the suppression hearing. Aple’s Br. at 14.
But the fact that dashboard VIN plates can be altered tells us nothing. Door VIN plates can be altered. All VIN plates can be altered. Simply put, the government has given us no reason to distinguish Miller, in which this court applied Class where there was a reasonable suspicion that the vehicle in question was stolen. Indeed, in Miller, unlike the present case, the suspect’s car actually had been stolen. See Miller, 84 F.3d at 1248-49. The government’s mere conjectures as to the likelihood of any particular VIN having been modified are therefore insufficient to overcome Class and Miller’s specific bar to the course of conduct pursued here by Trooper Avery.
The government’s reading of Class would transform the valid dashboard VIN, which would at least suggest that Mr. Caro’s car was not stolen, into a legal reason to penetrate further into the vehicle. We decline to extend Class in this manner. Instead, consonant with both Class and Miller, we affirm that where the dashboard VIN plate is readable from outside the passenger compartment, that VIN matches the VIN listed on the registration, and there are no signs the plate has been tampered with, there is insufficient cause for an officer to extend the scope of a detention by entering a vehicle’s passenger compartment for the purpose of further examining any VIN.[3]
We emphasize that we do not hold that Trooper Avery lacked reasonable suspicion that Mr. Caro’s car might have been stolen, or that the valid dashboard VIN dispelled that suspicion. Trooper Avery’s determination that the actual color of Mr. Caro’s car was different from its registered color, in addition to Mr. Caro’s inability to recall Mr. Jimenez’s last name, would indeed suggest that Trooper Avery should have taken all appropriate steps to ascertain the legal status of the car. This included the verification of an initial VIN, which (under Class ) Trooper Avery could have done regardless of any other suspicions. As Judge Lucero reminds us in his concurring opinion, it is possible that under United States v. Soto, even after examining the dashboard VIN and determining that it matched the registration, Trooper Avery could have continued to detain and *1247 question Mr. Caro based on his reasonable suspicion of a stolen vehicle. See Soto, 988 F.2d at 1556.
But without further justification than present here, the specffic search for an additional VIN inside the car was barred by Class and Miller. We therefore hold that Trooper Avery's actions exceeded the permissible scope of the detention and violated Mr. Cam's Fourth Amendment rights.
B. Consent To Search For The VIN
Next, in light of our holding that the search for an additional VIN was impermissible under Class and Miller, we turn to the issue of whether the search was nevertheless justified by Mr. Caro's consent. The district court concluded that Mr. Caro gave his valid consent to Trooper Avery's request to search for the door VIN. However, because the district court ruled that the VIN search was justified by the suspicion of a stolen vehicle, and failed to identify that search as legally problematic, it did not conduct a "taint analysis" of Mr. Caro's consent. See United States v. McSwain, 29 F.3d 558, 562 (10th Cir.1994).
 We have held that a search that is preceded by a Fourth Amendment violation may still be valid if the defendant's consent to that search "was voluntary in fact under the totality of the circumstances." Fernandez, 18 F.3d at 881. When there has been such a violation, the government bears the heavy burden of showing that the primary taint of that violation was purged. Id. To satisfy this burden, "the government must prove, from the totality of the circumstances, a sufficient attenuation or `break in the causal connection between the illegal detention and the consent.'" United States v. Gregory, 79 F.3d 973, 979 (10th Cir.1996) (quoting McSwain, 29 F.3d at 562 n. 2). As we examine the totality of the circumstances, no single fact is dispositive, but the factors set forth in Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), are especially important: (1) the temporal proximity of the illegal detention and consent, (2) any intervening circumstances, and (3) the purpose and flagrancy of any official misconduct. Gregory, 79 F.3d at 979.
First, with respect to the issUe of attenuation, there is no question that at the time Trooper Avery asked for Mr. Caro's permission to look for a VIN inside the vehicle, he was still in possession of Mr. Caro's driver's license, the vehicle registration, and the citation for excessive window tint. He also did not inform Mr. Caro that he was free to leave or to refuse consent to the inspection. We have held that although these are not prerequisites for establishing voluntary consent, they are "particularly worth noting." Fernandez, 13 F.3d at 882 (quoting Florida v. Bostick, 501 U.S. 429, 432, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).
Next, the three Brown factors also indicate a lack of voluntary consent. There was certainly no lapse of time between the Fourth Amendment violation and Mr. Caro's alleged consent (the first Brown factor), or any intervening circumstance (the second). See United States v. Sandoval, 29 F.3d 537, 543-44 (10th Cir.1994). As for the third Brown factor, it is true that Trooper Avery's conduct in this case was less obviously deliberate and flagrant than that of officers in other cases, see Fernandez, 18 F.3d at 883, and McSwain, 29 F.3d at 563. However, as stated in section (I), supra, and as shown on the videotape of the traffic stop, Trooper Avery failed to admit on direct examination that at the time he asked to look for a VIN inside the car, he had already determined that the dashboard VIN appeared valid. This lends credence to Mr. Caro's *1248 suggestion that Trooper Avery detained the vehicle "with a “quality of purposefulness,” and asked to inspect the additional VIN on “the hope that something might turn up.” Aplt’s Br. at 19 (quoting Brown, 422 U.S. at 605, 95 S.Ct. 2254).
Based upon the totality of the circumstances — the absence of attenuation, along with the lack of voluntariness under Broum — we hold that Mr. Caro’s consent to the VIN inspection was insufficient to purge the taint of his unlawful detention. Any evidence discovered by Trooper Avery as a result of the VIN inspection must therefore be suppressed as fruit of the poisonous tree.
C. Consent To The General Search Of The Vehicle
When Trooper Avery looked inside the passenger compartment for a VIN, he did not find one. However, he did discover air fresheners, which evidently made him suspicious Mr. Caro was transporting narcotics. He then requested Mr. Caro’s permission to “look through your vehicle.” Mr. Caro again consented. Aplt’s Br. at 5.
Once again, this consent was insufficient to purge the taint of Mr. Caro’s unlawful detention. The discovery of the air fresheners — the basis for the general request to search the vehicle — was the result of the illegal request to search for an additional VIN. The air fresheners cannot therefore provide a valid foundation for enlarged suspicion, as they were “come at by the exploitation of [the] illegality.” United States v. Shareef, 100 F.3d 1491, 1508 (10th Cir.1996) (quoting Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Furthermore, the same factors that tainted Mr. Caro’s consent to the VIN search were still present and unmitigated at the time of Trooper Avery’s request for permission to “look through” the vehicle. Trooper Avery still retained Mr. Caro’s documentation, virtually no time had elapsed, and Mr. Caro was not informed that he was free to leave. Aplt’s Br. at 5-6.
III. CONCLUSION
Trooper Avery’s pursuit of an additional VIN was unlawful, and Mr. Caro gave no consent sufficient to purge the taint of that unlawful detention. We VACATE the district court’s denial of Mr. Caro’s motion to suppress evidence discovered after Trooper Avery’s request to look for a VIN, and REMAND for further proceedings consistent with this opinion.

. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f). The case is therefore submitted without oral argument.

. The entire traffic stop was videotaped by the camera mounted in Trooper Avery’s patrol car, but the wireless microphone worn by Trooper Avery was apparently malfunctioning.

. Cf. Class, 475 U.S. at 117, 106 S.Ct. 960 (holding that the VIN search in that case was justified in part because it was a "minimal” intrusion that served "the safety of the officers” involved). We note that not only was this search for an additional VIN more than minimal and evidently unrelated to officer safety, but that when Trooper Avery did inspect the door for a VIN, he failed to find one. Aplt's App. at 90.