**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

GLENN EFREN SISNEROS,

    Defendant - Appellant.

No. 00-8033
(D.C. No. 99-CR-052-D)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK** and **LUCERO**, Circuit Judges.[**]

---

Defendant-Appellant Glenn Efren Sisneros entered a conditional plea of guilty to possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (b)(1)(B), and was sentenced to 70 months imprisonment, four years supervised release and fined $1,000. He now appeals from the denial of his motion to suppress. Our jurisdiction arises under 28 U.S.C. § 1291.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause is therefore ordered submitted without oral argument.

## Background

On March 20, 1999, a Wyoming highway patrolman (Chatfield) was westbound on I-80 on normal patrol when he observed an eastbound late-model Chevrolet Lumina with a Utah temporary tag. The officer had been notified previously that such a vehicle had been unattended on the highway. In fact, another officer (Moseman) had followed the vehicle for several miles, then passed it, and had requested this officer to take a close look at it.

Upon seeing the vehicle, the officer (Chatfield) estimated that it was traveling 80 m.p.h. in the passing lane; his radar established the speed at 78 m.p.h. The vehicle had no license plates, only a temporary sticker. The officer turned his vehicle around, activated his overhead lights and stopped the vehicle.

In response to the officer's request for a driver's license, registration and proof of insurance, Mr. Sisneros produced a Utah I.D. card and a rental agreement indicating that the vehicle had been rented to his brother. The officer took these items to his vehicle and learned through his dispatcher that Mr. Sisneros had a valid Utah license, there were no warrants out for his arrest, and the vehicle was not listed as stolen. The officer then issued Mr. Sisneros a warning ticket for speeding, and returned the I.D. card and rental agreement to him. Mr. Sisneros was told he was free to leave. I Supp. R. 14, 64, 112. After taking two steps toward the police vehicle, however, the officer returned to Mr. Sisnernos's

-2-

vehicle and asked if he could question him. Mr. Sisneros responded affirmatively; the officer asked him whether he had any guns, large amounts of cash, or drugs. The officer testified that he asked these questions in the hopes that Mr. Sisneros would consent to a search for drugs, as he was suspicious of drug trafficking. Id. at 16. Mr. Sisneros responded "no" to each of the officer's questions. The officer then asked if he could search the vehicle, and Mr. Sisneros replied yes.

The officer then asked Mr. Sisneros to open the trunk. As Mr. Sisneros was exiting the vehicle, the officer observed a plastic pouch in a compartment located on the driver's side door. The pouch contained a collapsible set of Allen wrenches. After putting the set back, the officer then searched the trunk and returned to the passenger compartment. Noticing that the door panels were attached by Allen screws, the officer removed the front door panels on either side, discovering a total of three packages wrapped in duct tape. The packages contained 519 grams of heroin and 321 grams of cocaine.

## Discussion

A.    Jurisdiction.

Mr. Sisneros filed his notice of appeal two days late, and we remanded for a determination of whether excusable neglect existed for the late filing. Fed. R.

-3-

App. P. 4(b)(4). The district court found excusable neglect based upon defense counsel's mistaken belief that Fed. R. App. P. 26(c) extended the ten-day period from which to appeal. Fed. R. App. P. 4(b)(1)(A)(i). Rule 26(c) allows an additional three days to be added to a prescribed period when a deadline runs from service of a document, unless the document is delivered on the date of service contained in the proof of service. Rule 26(c) is similar to Fed. R. Civ. P. 6(e), which allows the additional three days if the document is served by mail. Fed. R. App. P. 4(b)(1)(A)(i), however, makes it clear that the appeal time runs from ten days after entry of an order or judgment, not service of the order or judgment appealed from. Ample precedent, including Tenth Circuit precedent, rejects the notion that Rule 26(c) has any applicability in these circumstances. Savage v. Cache Valley Dairy Ass'n, 737 F.2d 887, 888 (10th Cir. 1984); Haroutunian v. INS, 87 F.3d 373, 377 (9th Cir. 1996); Sofarelli Assocs. v. United States, 716 F.2d 1395, 1396 (Fed. Cir. 1983); Welsh v. Elevating Boats, Inc., 698 F.2d 230, 231-32 (5th Cir. 1983).

We can review the district court's finding of excusable neglect even in the absence of an objection because it pertains to our jurisdiction. City of Chanute, Kansas v. Williams Natural Gas Co., 31 F.3d 1041, 1045 n.8 (10th Cir. 1994). The standard of review is an abuse of discretion, id. at 1045, applying the test of Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395

(1993), specifically (1) the danger of prejudice to the non-movant, (2) the length of delay and its potential impact upon judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. The fault of the delay is probably the most important factor. City of Chanute, 31 F.3d at 1046.

At least in the civil context and over a dissent, the Fifth Circuit held that reliance upon the service by mail rule which leads to an untimely notice of appeal does not constitute excusable neglect. Midwest Employers Cas. Co. v. Williams, 161 F.3d 877, 879 (5th Cir. 1998). However, the court was careful to distinguish a criminal case (unpublished) where counsel relied upon Rule 26(c) and there was a finding of excusable neglect. Id. at 880 (citing United States v. Evbuomwan, 1994 WL 523681 (5th Cir. 1994)). The court suggested that the excusable neglect provision in criminal cases may be broad enough to cover ignorance or neglect of counsel, relying upon United States v. Lewis, 522 F.2d 1367, 1369 (5th Cir. 1975) (per curiam).

We are mindful of the Supreme Court's advice that **all** of the circumstances concerning an omission must be considered and that excusable neglect is not limited solely to errors beyond the control of the attorney. Pioneer, 507 U.S. at 391-92; City of Chanute, 31 F.3d at 1046. Any rule that precluded a district judge as a matter of law from finding excusable neglect in these circumstances

would be contrary to that advice and the deferential standard of review involved. The district court did not abuse its discretion in finding excusable neglect and we have jurisdiction.

B.    The Merits

Several well-established principles guide our review of a district court's decision on a motion to suppress.  We accept the district court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the prevailing party--here, the Government.  United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001).  Witness credibility and the weight accorded witness testimony are matters for the trial court.  Id.  The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo.  Id.

The traffic stop in this case is an investigative detention, analyzed under the principles stated in Terry v. Ohio, 392 U.S. 1, 8 (1968).  Caro, 248 F.3d at 1244.  Whether an investigative detention is reasonable depends upon a two-part inquiry: (1) was the officer's action justified at its inception, and (2) was the officer's action reasonably related in scope to the circumstances which justified the initial interference.  United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995).

Mr. Sisneros argues that the officer's action was not justified at its

inception. He suggests that an invalid purpose motivated the stop when the conduct of both officers is involved, given the first officer's request that the second officer take a close look at the vehicle. Yet the first officer did not stop the vehicle and the primary focus of the inquiry must on the second officer who did.

"An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The district court found that the officer clocked Mr. Sisneros at three miles over the posted speed limit and, therefore, the stop was justified at its inception. Precedent compels our agreement.

Mr. Sisneros makes a very strong argument that the stop never would have been made had the first officer not requested it and that the second officer admitted that he did not stop vehicles going three miles over the interstate highway speed limit very often. The district court also observed that "it does appear that requests for permission to ask further questions after a stop based on a minor traffic violation are a common practice of the Wyoming Highway Patrol," and that "patrolmen seem to be acting at the limits of lawful conduct." I R. Doc. 45 at 13-14. Be that as it may, the subjective motivations of an officer

who stops a vehicle simply are not relevant to whether a stop is reasonable under the Fourth Amendment. Whren v. United States, 517 U.S. 806, 813 (1996); Botero-Ospina, 71 F.3d at 787. The fact that the officer "may have harbored a [not so] secret hope of finding evidence of drug trafficking," is irrelevant given the observed traffic violation. Botero-Ospina, 71 F.3d at 788.

Mr. Sisneros next argues that the officer's action during the stop was not reasonably related in scope to the circumstances which justified the stop. Specifically, he argues that he was unlawfully detained when he consented to the search of the vehicle and that the subsequent search was a product of the unlawful detention or based upon involuntary consent.

An officer conducting a routine traffic stop may request a driver's license, vehicle registration, proof of insurance and the like, run a computer check on the driver or the vehicle, and issue a warning or citation. Caro, 248 F.3d at 1244. That normally constitutes the permissible scope of the investigative detention based upon a traffic or equipment violation. Once those tasks are completed, the driver must be allowed to proceed on his way without further detention for questioning unrelated to the purpose of the stop, unless the officer has a reasonable articulable suspicion that the driver is engaged in criminal activity or the driver consents to further questioning. Id.

We first consider whether on this record, the officer had reasonable

suspicion of criminal activity sufficient to continue the investigative detention. The officer testified that Mr. Sisneros was nervous, had shabby clothes, lacked luggage, and was not named in the rental agreement and that all of these factors caused the officer to suspect drug trafficking. The district court held that these factors standing alone do not furnish reasonable suspicion of criminal activity.

Turning to consent, the district court credited the officer's testimony and determined that Mr. Sisneros voluntarily consented to further questioning. The testimony is uncontroverted that prior to the further questioning, the officer returned documents to Mr. Sisneros, issued a citation, and told him he was free to go and to have a safe trip. These steps are not dispositive, however, if there is evidence suggesting that the detention has not ended. United States v. Bustillos-Munoz, 235 F.3d 505, 515 (10th Cir. 2000) (a coercive show of authority, display of weapon, physical touching by officer, or commanding tone of voice by the officer may suggest that investigative detention has not concluded in fact).

Mr. Sisneros argues that a reasonable person in his position would not have felt free to leave and decline the officer's requests for further questioning and to search his vehicle. According to Mr. Sisneros, the officer said "hey bud, I'm not through with you yet, and I got some questions I wanna ask you." I R. Supp. at 112. He argues that he had just been followed for 10-15 miles by another officer before being stopped, that the officer used a commanding and threatening tone of

voice that he was sensitive to because of his previous encounters with law enforcement, and that the officer took only two steps away after returning Mr. Sisneros's documents before asking further questions. Id. at 107, 112-13. Mr. Sisneros testified that he felt intimidated by the officer's show of authority, and that the officer had his right hand on his holster from the beginning of the stop. Id. at 113, 125.

The district court rejected Mr. Sisneros's testimony about the officer's demeanor towards him as incredible. Thus, the district court rejected the notion that the officer engaged in a coercive show of authority, and accepted the officer's contrary testimony. Specifically, the officer testified that he spoke in normal conversational speech, did not have his hand on his weapon, and in no way threatened Mr. Sisneros. Id. at 20-22. Given those findings which are not clearly erroneous and the totality of the circumstances (including an early morning, daylight stop with one officer at an interstate exit), we hold that there was voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 226-28 (1973); United States v. Elliott, 107 F.3d 810, 814 (10th Cir. 1997). While it is true that Mr. Sisneros had been followed by another officer, he consented to further questioning by a different officer after not having been followed for a substantial distance. As for the brief moment between the end of the investigative detention and the officer's request for further questioning, the

district court noted this "curious behavior" was an attempt to comply with the requirement that a driver feel free to leave before his consent will be deemed voluntary. Moreover, given an officer's right to request further questioning before a person drives away, one would not expect a long interval between an investigative detention and the request for consensual questioning.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge