**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROSENDO DeJESUS ACUNA-
NAVARRO,

Defendant - Appellant.

.

No. 03-7047
D.C. No. 02-CR-78-P
(E.D. Oklahoma)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **LUCERO** , Circuit Judges, and **CASSELL** , District Judge. **

Petitioner-Appellant, Rosendo DeJesus Acuna-Navarro, who entered a

conditional plea of guilty to possession of a controlled substance with intent to

---

*This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable Paul G. Cassell, United States District Judge for the
District of Utah, sitting by designation.

distribute, [1] appeals the district court's denial of his motion to suppress evidence and to appoint an interpreter at an informal de-briefing.  Finding no error, we affirm.

## *Background*

On August 18, 2002, at approximately 6:45 p.m., Oklahoma Highway Patrol Trooper Darren Koch was traveling east-bound on I-40, within the Eastern District of Oklahoma, and noticed a Blue Nissan Pathfinder following too close to a semi-truck.  As a result of this traffic violation, Trooper Koch pulled over Mr. Acuna-Navarro's vehicle. As Trooper Koch approached the Pathfinder, he noticed Mr. Acuna-Navarro sitting in the driver's seat, and co-defendant, David Francisco Gonzalez, sitting in the passenger seat. Trooper Koch asked  Mr. Acuna-Navarro for his license.  Mr. Gonzalez advised the trooper that Mr. Acuna-Navarro did not have a driver's license and that Mr. Acuna-Navarro did not speak English.

Trooper Koch, who speaks and understands little Spanish, asked in Spanish for Mr. Acuna-Navarro to provide his license and directed him to go his patrol car.  Mr. Acuna-Navarro walked with the trooper back to his patrol car and gave Trooper Koch an identification card. While still in the patrol car and speaking Spanish, Trooper Koch asked Mr. Acuna-Navarro his travel plans.  Mr. Acuna-

---

[1] 21 U.S.C.  841(a)(1) & (b)(1)(A).

Navarro stated, in Spanish, that he was from Los Angeles and was headed to Georgia.

At about the same time, Trooper Chip Collins arrived on the scene. Trooper Collins spoke with Mr. Gonzalez, who had remained in the Pathfinder, about their travel plans. Mr. Gonzalez stated he was going to Tennessee for some kind of work and would be gone for about a week. Trooper Collins then went to Trooper Koch's patrol car and told him what Mr. Gonzalez had said about their travel plans.

While still in the patrol car, Trooper Koch then issued Mr. Acuna-Navarro a warning and returned all of his paperwork to him. Trooper Koch then said "Adios" to Mr. Acuna-Navarro. At the suppression hearing, Mr. Acuna-Navarro testified that he understood this to mean he was free to leave. As Mr. Acuna-Navarro was leaving the patrol car, Trooper Koch asked him, in Spanish, if he had any weapons, drugs, alcohol, or large sums of cash in his vehicle. Mr. Acuna-Navarro indicated he did not. Trooper Koch then asked Mr. Acuna-Navarro, in Spanish, if he could search his car. Mr. Acuna-Navarro responded, "si."

Trooper Koch then looked inside the car and observed tools, including a set of long and curved needle nose pliers, wire cutters, a screwdriver, and a socket set. He then looked underneath the vehicle and observed gas coming over the top

of the gas cap. As a result, the trooper looked at the gas tank and saw it had been "tampered with."

In the cargo area in the rear of the Pathfinder, the trooper observed the screws on the D-rings on the carpet showed signs that a screwdriver had been used on them. The trooper removed the trim and the D-rings and noticed the bolts also had screwdriver marks on them. Also, the hoses had fresh smudges on them and the clamps on the hoses were different. After removing the hoses and the sending unit of the gas tank, the officer saw four plastic wrapped bundles suspended within the gas tank. The trooper removed one of the bundles, and discovered it contained methamphetamine.

## Discussion

In reviewing a District Court order granting a motion to suppress, we accept the District Court's factual findings unless clearly erroneous, view the evidence in the light most favorable to those findings, and review questions of law de novo. [2]

### I. Extension of the Stop

Mr. Acuna-Navarro argues that what began as a routine traffic stop was extended beyond permissible bounds. It is well established that during a traffic stop, a police officer may ask to see a driver's license and registration and check

---

[2] *United States v. Caro,* 248 F.3d 1240 (10th Cir. 2001).

that they are valid. [3] Once the purposes of the traffic stop are met, however, a motorist must be allowed to continue on his way. [4] An officer may only delay a motorist further if the officer has an objectively reasonable suspicion of illegal activity or the stop has become consensual. [5] In this case, because we conclude the trooper had reasonable suspicion to further question Mr. Acuna-Navarro, we do not reach the issue of whether the further questioning became consensual.

An officer may extend a traffic stop and ask a motorist further questions if there exists "reasonable suspicion" of criminal activity. [6] Whether reasonable suspicion exists is a determination made not on any one particular factor, but rather on the totality of the circumstances facing the officer. [7] In this case, there were sufficient reasons for Trooper Koch to delay Mr. Acuna-Navarro briefly to investigate a suspicion of criminal activity. Trooper Koch knew that Mr. Acuna-Navarro did not have a valid driver's license and that his story about travel plans differed from that of his passenger. This combination of inconsistent travel plans and failure to establish a lawful ability to operate the vehicle have served as

---

[3] *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001); *see, e.g., Caro*, 248 F.3d at 1244.

[4] *Berkemer v. McCarty*, 468 U.S. 420, 437(1984).

[5] *Holt*, 264 F.3d at 1221.

[6] *Id.*

[7] *United States v. Soto,* 988 F.2d 1548, 1554 (10th Cir. 1993).

reasonable suspicion for extending traffic stops in several prior cases. [8] We see no reason to depart from these holdings here. Moreover, the extension of the stop was very brief. Trooper Koch only asked whether Mr. Acuna-Navarro had any suspicious items in his car and whether he would agree to a search. The extension of the stop could have been only a minute or two, at most. In light of these facts, we conclude that the trial court properly determined that a reasonable suspicion existed to continue to detain Mr. Acuna-Navarro for the limited period of time required to seek consent to search the car.

*II. Consent to Search the Vehicle* .

Mr. Acuna-Navarro also argues that he did not give a voluntary consent to search his car. Valid consent to search exists when it is given voluntarily and freely. [9] The determination of the voluntariness of consent is a question of fact that must determined by evaluating the totality of the circumstances. [10] Consent to search may be voluntary even though the consenting party is being detained at the

---

[8] *See, e.g., Holt*, 264 F.3d at 1221; *United States v. West,* 219 F.3d 1171, 1176 (10th Cir. 2000); *United States Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir. 1998); *United States v. Gonzalez-Lerma,* 14 F.3d 1479,1483 (10th Cir. 1994), *cert. denied*, 511 U.S. 1095 (1994); *United States v. Pena,* 920 F.2d 1509, 1513 (10th Cir. 1990), *cert. denied*, 501 U.S. 1207 (1991); *United States v. Rivera*, 867 F.2d 1261, 1264 (10th Cir. 1989).

[9] *United States v. Pena,* 143 F.3d 1363, 1366 (10th Cir. 1998), *cert. denied,* 525 U.S. 903 (1999).

[10] *United States v. Taverna*, 348 F.3d 873, 878 (10th Cir. 2003).

time the consent is given. [11] The government must "(1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given and (2) prove that this consent was given without implied or express duress or coercion." [12]

Mr. Acuna-Navarro claims he did not actually give permission for a search because a language barrier prevented him from understanding what was happening. This argument runs squarely into a major factual difficulty: Mr. Acuna-Navarro admitted on the stand at the suppression hearing that he had actually consented to the search. In addition, Mr. Gonzalez testified at the hearing that Mr. Acuna-Navarro admitted in jail that he consented to the search. Finally, there is ample reason for believing that consent was knowingly and freely given. The district court found that Trooper Koch spoke to Mr. Acuna-Navarro in Spanish and that Mr. Acuna-Navarro gave actual consent for the search. Trooper Koch testified that he spoke in a normal voice and did not draw his weapon or make any threats or gestures to obtain the consent. Additionally, the traffic stop occurred on the shoulder of a public highway. In light of all these facts, we agree with the district court's conclusion that Mr. Acuna-Navarro's consent satisfied the applicable standard.

---

[11] *United States v. Doyle,* 129 F.3d 1372, 1375 (10th Cir. 1997).

[12] *United States v. Sanchez,* 89 F.3d 715, 719 (10th Cir. 1996) (internal quotation and citation omitted).

*III. Use of an Agent/Translator at the Debriefing*

Mr. Acuna-Navarro finally contends that the government's failure to provide him with an independent translator at his post-plea debriefing violated the Court Interpreters Act.[13]  This court reviews an appointment under the Court Interpreter's Act for abuse of discretion.[14]

At the debriefing, the government relied on Carlos Sandoval (a Spanish-speaking agent with the Bureau of Alcohol, Tobacco, and Firearms) to interpret. Mr. Acuna-Navarro did not raise any objection to this arrangement at the time of the debriefing, presenting it only later at his initial sentencing hearing.

Mr. Acuna-Navarro's argument is without merit. The Court Interpreter's Act provides that a qualified interpreter shall be provided at "judicial proceeding instituted by the United States."[15]  The statute further specifies that it refers to all proceedings, "including pretrial and grand jury proceedings . . . conducted in or pursuant to the lawful authority of a United States District Court."[16]  It would significantly extend the reach of this statute to conclude that "judicial proceedings" include the kind of informal debriefings with government agents at

---

[13] 18 U.S.C. § 1827.

[14] *United States v. Osuna,* 189 F.3d 1289 (10th Cir. 1999).

[15] 28 U.S.C. § 1827(d)(1).

[16] 28 U.S.C. § 1827(j).

issue in this case.  Indeed, such a formalistic reading of the statute might actually be harmful to criminal defendants.  The government is under no obligation to debrief defendants to see whether they can provide substantial assistance in the prosecution of others. If such debriefings become burdened with the requirements that attach to formal proceedings, the government might become more reluctant to hold such debriefings at all.  In any event, even if the Act extended to the debriefing, Mr. Acuna-Navarro has provided nothing suggesting that a court interpreter would have made any substantive difference to the outcome below. For all these reasons, we reject his argument that the district court violated the Court Interpreter's Act.

AFFIRMED.

Entered for the Court,


Paul G. Cassell
District Court Judge