**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

MICHAEL STEWART-
POPPELSDORF,

Defendant - Appellee.

No. 04-2077
(D. Ct. No. CR-03-1218-BB)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **HENRY**, Circuit Judge, and **WHITE**,[†] District Judge.

Defendant-Appellee Michael Stewart-Poppelsdorf was indicted for (1) possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii); (2) being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1); (3) carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and (4) conspiracy to distribute methamphetamine, 21

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[†]Honorable Ronald A. White, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

U.S.C. § 846. He moved to suppress evidence obtained when a police officer searched the vehicle in which he was a passenger following a routine traffic stop. After an evidentiary hearing, the District Court granted the motion. The Government challenges this ruling on appeal. We exercise jurisdiction pursuant to 18 U.S.C. § 3731 and AFFIRM.

## I. BACKGROUND

At 6:45 a.m. on June 1, 2003, Officer Arcenio Chavez stopped a 2003 Chrysler Sebring traveling east on Interstate 40 near Gallup, New Mexico because neither the driver nor the passenger appeared to be wearing seatbelts. The ensuing events were videotaped by a recorder mounted in Officer Chavez's patrol car. Officer Chavez approached the Chrysler and asked Vanessa Garcia, the driver, to produce her license, registration, and proof of insurance. Ms. Garcia produced her license and a rental contract that indicated she was the authorized driver. Pursuant to local custom, Officer Chavez asked Ms. Garcia to accompany him to the patrol car while he wrote the ticket for the seatbelt violation.

While writing the ticket, Officer Chavez asked Ms. Garcia where she had come from and where she was going. She replied that she came from Bluewater, New Mexico, and was headed to Albuquerque. Bluewater, however, was 32 miles ahead of the place they were stopped, not behind them. He then asked her

who her passenger was. She initially could not remember his name because, she said, she had just met him the day before. Later she recalled that his name was "Mike." Officer Chavez continued questioning Ms. Garcia about her relationship with Mr. Poppelsdorf, focusing upon the fact that she had spent the night with him even though she had only known him for a day. Officer Chavez testified that Ms. Garcia was the most nervous driver he had ever seen and that unlike most drivers, her nervousness increased over the course of the traffic stop.

Officer Chavez then returned to the Chrysler to check its VIN. While doing so, he spoke with Mr. Poppelsdorf who was still sitting in the passenger seat. Contrary to Ms. Garcia's statements, Mr. Poppelsdorf said that they were coming from Arizona, not Bluewater, and that he had known Ms. Garcia for two years. Officer Chavez testified that Mr. Poppelsdorf appeared to be even more nervous than Ms. Garcia, whereas in the usual traffic stop, the driver is more nervous than the passenger.

After returning Ms. Garcia's documents and issuing her the citation, Officer Chavez continued to detain her and Mr. Poppelsdorf. Officer Chavez returned to the Chrysler to ask Mr. Poppelsdorf more questions concerning the pair's travels, their relationship, and whether they were carrying any contraband in the car. He also asked for consent to search the car, which both Ms. Garcia and Mr. Poppelsdorf refused to give. Officer Chavez then called a second patrol

- 3 -

unit to bring a narcotics-sniffing dog, which, upon arrival, alerted to the presence of drugs in the vehicle. Based on these facts, a warrant was issued to search the car, whereupon the officers found methamphetamine, drug paraphernalia, and a loaded .357 Colt revolver. Mr. Poppelsdorf admitted to the police that these were his items.

After the grand jury returned the indictment, Mr. Poppelsdorf moved to suppress the evidence seized from the Chrysler arguing that his Fourth Amendment right to be free from unreasonable searches and seizures was violated. The District Court granted the motion, holding that once Officer Chavez issued the citation he did not have a reasonable suspicion of criminal wrongdoing to support the prolonged detention. The Government filed a motion for reconsideration, which the District Court denied. This appeal followed.

## II. DISCUSSION

When reviewing an order granting a motion to suppress we accept the district court's factual findings, and determinations of witness credibility, unless they are clearly erroneous. *United States v. Flores*, 48 F.3d 467, 468 (10th Cir 1995). We view the evidence presented in the light most favorable to the district court's determination.[1] *Id.* Moreover, we give due weight to the district court's

_____

[1]We note that the outcome of this case may have been different had the District Court found Officer Chavez's reasons for suspecting criminal activity

(continued...)

inferences drawn from historical facts. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999). Nevertheless, we review de novo the ultimate determination of reasonableness under the Fourth Amendment. *Flores*, 48 F.3d at 468.

A routine traffic stop is analogous to an investigative detention and is analyzed under the principles enunciated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001). To determine the constitutionality of an investigative detention, we undertake a two-step inquiry. First, we determine whether the police officer's action was justified at its inception. *Id.* Second, we consider whether the action was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*

During a routine traffic stop, a police officer may request a driver's license and vehicle registration, run a computer check, and issue a citation as a matter of course. *Id.* Moreover, an officer may ordinarily ask questions relating to a driver's travel plans without exceeding the scope of a traffic stop. *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001). After completing these activities, an officer may continue to detain a driver only if: (1) the officer has an

---

¹(...continued)
credible. *See United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir.1995) (finding reasonable suspicion when the defendant was nervous, his travel plans were implausible and inconsistent with passenger's story, and he contradicted his own statement on how long he knew the passenger).

objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) the detention has become a consensual encounter. *Caro*, 248 F.3d at 1244.

Here, there is no question that Officer Chavez's initial stop for a seatbelt violation was justified, nor does the Government argue that the initial detention became a consensual encounter. The issue, therefore, is whether Officer Chavez had a reasonable and articulable suspicion of criminal activity such that his continued detention of Mr. Poppelsdorf after he issued the citation did not offend the Fourth Amendment.

In conducting this inquiry, we consider the totality of the circumstances. *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998). The first factor the Government relies on as contributing to a reasonable suspicion is that Ms. Garcia and Mr. Poppelsdorf fit a drug courier profile because they were headed east on a "known drug route," in the early morning hours, when smugglers are known to travel through New Mexico. This Court has stated that traveling from a source city is, "at best, a weak factor in finding suspicion of a crime." *Williams*, 271 F.3d at 1270. Here, there are no circumstances that distinguish this case from a very large category of innocent travelers heading east, save Ms. Garcia's confusion as to her location discussed infra. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980). This lack of distinguishing characteristics weakens the already slight

weight this factor carries. Moreover, as the District Court noted, neither Phoenix nor Tucson, cities Officer Chavez identified as "source cities," are situated on I-40, which makes suspicion of a car headed east on I-40 "even less credible."

The Government also contends that the presence of a radar detector in the rental car was suspicious. In New Mexico, however, radar detectors are legal. The Government provided no evidence linking radar detectors to drug trafficking. *Compare Williams*, 271 F.3d at 1269 (finding that the presence of a two-way radio supports a reasonable suspicion of criminal activity when there was testimony that the officer knew from experience that drug traffickers travel in tandem and sometimes use such radios to avoid detection by law enforcement personnel). Under these circumstances, the presence of a radar detector is, at best, an indicator of an intent to speed, not an indicator of illegal drug activity.

The Government next contends that Ms. Garcia's and Mr. Poppelsdorf's alleged intense and increasing nervousness contributed to Officer Chavez's reasonable suspicion. Although we have consistently held that nervousness is of limited significance when determining if reasonable suspicion exists, extreme and continued nervousness is "entitled to somewhat more weight." *Id.* at 1268. After viewing the videotape of the traffic stop, however, the District Court found that neither Ms. Garcia nor Mr. Poppelsdorf seemed particularly nervous; rather, it found that they "became more agitated the longer the interrogation continued."

This finding is not clearly erroneous and nervousness, therefore, is of limited significance in our analysis.

Lastly, the Government entreats us to attach great weight to the pair's inconsistent stories regarding their relationship and the city where they spent the night. The District Court found that a proper inference to be drawn from Ms. Garcia's confusion as to her location would be that she was impaired or intoxicated, not that she was a drug courier. Moreover, because Ms. Garcia was confused, any truthful response Mr. Poppelsdorf gave would have been inconsistent with Ms. Garcia's statement. The District Court also did not impart much significance to their inconsistent stories regarding their relationship, reasoning that "inconsistent answers regarding historical information would seem less suspicious than inconsistencies about their . . . destination or the purpose of their trip." We give due weight to these inferences drawn by the District Court. *Patten*, 183 F.3d at 1193. Given this weight, we agree that their inconsistent statements were not the type of inconsistencies that warrant suspicion of criminal conduct. *See United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997) (holding that an error in identifying city where car was rented was not suspicious because there was no evidence the defendant was trying to conceal the fact that he rented the car in a city known to be a source for drugs).

In sum, the Government's argument that there was reasonable suspicion of

criminal activity boils down to four factors: (1) Ms. Garcia's and Mr. Poppelsdorf's perceived extreme nervousness, which the District Court discounted as a factual matter, (2) their conflicting stories regarding their relationship, which the District Court did not find suspicious of a criminal act, (3) their conflicting stories regarding their location, which the District Court attributed to Ms. Garcia's early morning confusion, and (4) they were headed east with a radar detector, which, under the circumstances of this case, we do not find indicative of wrongdoing. Viewing the evidence in a light most favorable to Mr. Poppelsdorf and giving due weight to the inferences drawn by the District Court, we hold that Officer Chavez did not have a reasonable suspicion that Ms. Garcia and Mr. Poppelsdorf were involved in criminal activity and it was therefore unlawful to detain Mr. Poppelsdorf after Ms. Garcia was issued the seatbelt citation.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's order suppressing the evidence seized from the Chrysler.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge


- 9 -