**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOE ALVARADO, a/k/a Jose
Raymond Alvarado, Shorty Joe
Alvarado, and Avardo,

        Defendant - Appellant.

No. 04-4265

(D.C. No. 03-CR-125-PGC)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

Defendant was convicted on two counts of possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and of being a

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant to life imprisonment under 21 U.S.C. § 841(b)(1)(A) because of his two prior felony drug convictions.

Officers from the Weber-Morgan Narcotics Strike Force ("Strike Force") received a number of tips about Defendant distributing controlled substances. Specifically, the Strike Force was approached on two separate occasions by two confidential informants ("CI") regarding Defendant. The first CI told the Strike Force that Defendant was a multi-pound drug dealer who was staying at the Days Inn motel in Ogden, Utah. He described Defendant as a short Hispanic male with long hair in his forties or fifties. This CI had given the Strike Force a number of tips in the past, and the officers deemed him to be reliable.

The second CI had also previously worked with the officers and was considered reliable. He also told the Strike Force that Defendant was a multi-pound drug dealer in Ogden and that he had personally witnessed a pound of methamphetamine in the trunk of Defendant's vehicle–a green Pontiac. The second CI also corroborated the first informant's physical description of Defendant.

Armed with the informants' descriptions, field officers from the Strike Force began to drive towards the Days Inn to search for Defendant. A couple of blocks from the Days Inn, the field officers observed a green Pontiac Bonneville

being driven by a man who matched the CIs' description of the suspect. The officers followed the Pontiac into a Checker Auto Parts store parking lot. The field officers proceeded to position their vehicle directly in front of the Pontiac to block it from leaving. At the time, Defendant was busy making notations in a notebook and did not notice the officers. The field officers approached Defendant's car and asked Defendant to exit the vehicle. After confirming Defendant's name, the field officers explained to Defendant that they were investigating information that he was selling drugs.

The field officers asked Defendant if he had any drugs, guns, or weapons. Defendant replied that he did not. And when the field officers then asked if they could search Defendant's person for drugs, guns, or weapons, Defendant replied, "Yeah, go ahead." Rec., Vol. III, at 14. In the course of the pat-down search, one of the field officers discovered a baggie of what appeared to be methamphetamine in Defendant's pocket.

Defendant was placed under arrest and the Pontiac was searched incident to the arrest. The officers found a notebook containing several monetary notations, a Days Inn room key and $1,020 in cash in the car. In the trunk, the officers found a tool box with a brown bag inside. Inside the bag was a digital scale, measuring spoons, empty sandwich bags, and a pouch containing a large quantity of methamphetamine. Defendant was charged in a four-count indictment with two

counts of possession of methamphetamine with intent to distribute, possession of a firearm by a convicted felon, and possession of a firearm and ammunition by an unlawful user of, or person addicted to, a controlled substance.

Defendant filed a pro se pretrial motion to suppress the evidence found in his pocket and in his car. Finding that the officers had a reasonable, articulable suspicion to detain Defendant for an investigative purpose, the district court denied Defendant's motion. Prior to trial, the government filed a "Notice of Sentencing Enhancement" pursuant to 21 U.S.C. § 841(b)(1)(A) because Defendant had two prior felony drug convictions. With the sentence enhancement, Defendant would receive a statutory mandatory minimum sentence of life imprisonment if convicted. After a trial, Defendant was convicted of the two distribution charges and the firearms violation, and was sentenced to life imprisonment. Defendant now appeals the district court's denial of his motion to suppress and his sentencing.

In reviewing a district court's denial of a motion to suppress, "we accept the district court's factual findings unless they are clearly erroneous, and we view the evidence in the light most favorable to the district court's determination." *United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir. 2001). We review the district court's determination of Fourth Amendment reasonableness de novo. *Id.*

On appeal, Defendant first asserts that the Strike Force officers did not

have the necessary reasonable, articulable suspicion of criminal activity to detain him. Because Defendant was not free to leave the Checker Auto Parts store parking lot while the officers blocked his car, this encounter would best be described as an investigative detention. *See United States v. Werking*, 915 F.2d 1404, 1408-09 (10th Cir. 1990). An investigative detention of limited scope and duration does not require probable cause so long as the officer has a reasonable suspicion that the person being detained is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Officers making a *Terry* stop "'must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.'" *United States v. Dennison*, 410 F.3d 1203, 1207-08 (10th Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In this case, the district court determined that Defendant's encounter with the Strike Force field officers was a lawful investigative detention under *Terry*. During the suppression hearing, the district court made several factual findings to support reasonable suspicion:

1. "First, the car was found close to Days Inn where [the Strike Force] had a report of methamphetamine distribution or just two blocks away and was driving

away from the Days Inn which would have connected it potentially with the Days Inn." Rec., Vol. IV, at 106.

2. "Secondly, [the Strike Force] had two reports. First from CI number one, and secondly from CI number two that suggested criminal activity was afoot. CI number two is particularly important because the CI had described a green vehicle similar to a Pontiac Bonneville and that was the kind of car that was involved." *Id.*

3. "The CI also said that he or she had personally seen a pound of methamphetamine in the car. So that would definitely connect it with criminal activity. CI number two had worked for years with the strike force, received a $1,000 reward and provided reliable information in the past on numerous occasions including 30 search warrants, and . . . 20 controlled buys." *Id.*

4. "In addition, [the Strike Force] had a connection with the driver. The driver has been described as an elderly Hispanic with long hair and all those things matched." *Id.* at 107.

5. "[O]n top of that, when they approached the car they saw the defendant writing down dollar figures which would have suggested involvement in distribution of drugs. That observation was made before the defendant was aware he was detained and so that could have been included as part of the circumstances justifying reasonable suspicion." *Id.*

Judging these several factors under the totality of the circumstances, we conclude that the Strike Force officers had an objectively reasonable and articulable suspicion that Defendant was involved in criminal conduct when they blocked his car. Having determined that the investigative detention was proper, we need not address whether the Defendant's consent was improperly tainted by unlawful questioning.

Defendant also challenges his sentence as being imposed in violation of his constitutional rights, as recently articulated by the Supreme Court in *United States v. Booker*, __U.S.__, 125 S. Ct. 738 (2005). Specifically, Defendant claims that the district court committed constitutional error when it concluded by a preponderance of the evidence that his prior convictions were to be included in determining his life sentence under 21 U.S.C. § 841(b)(1)(A). Issues concerning the legality of Defendant's sentence are reviewed de novo. *United States v. Gonzales-Lerma*, 14 F.3d 1479, 1484 (10th Cir. 1994).

We agree with Defendant's admission in his brief "that the binding case law of *Almendarez-Torres* [*v. United States*, 523 U.S. 224 (1998)] forecloses this argument" and that "the *Almendarez-Torres* exception [for prior convictions] to the rule announced in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] . . . 'remains good law.'" Aplt. Br. at 16 (quoting *United States v. Moore*, 401 F.3d

1220, 1224 (10th Cir. 2005)).[1]  Thus, we find Defendant's argument regarding his

enhanced sentence unavailing and conclude that his sentence was not unlawfully

enhanced.

We **AFFIRM** the district court's denial of Defendant's motion to suppress

and the sentence imposed.

Entered for the Court


Monroe G. McKay
Circuit Judge

---

[1]We note that Defendant raises this issue to preserve his challenge of *Moore* to either an en banc panel of this court or the United States Supreme Court.  We are bound, however, by the precedent of this court articulated in *Moore*.