**F I L E D**

PUBLISH

**November 9, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE ISRAEL CHAVIRA,

    Defendant - Appellant.

No. 05-3455

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 05-CR-40010-JAR)**

---

Melissa Harrison, Assistant Federal Public Defender, (David J. Phillips, Federal Public Defender, and Ronald Wurtz, Assistant Federal Public Defender, on the briefs), Kansas City, Kansas, for Plaintiff - Appellee.

James A. Brown, Assistant United States Attorney, (and Eric F. Melgren, United States Attorney, on the brief), Topeka, Kansas, for Defendant - Appellant.

---

Before **KELLY**, **ANDERSON**, and **BEAM**,[*] Circuit Judges.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable C. Arlen Beam, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Defendant-Appellant Jose Israel Chavira entered a conditional plea of guilty to counts 1 and 3 of a three-count indictment, reserving the right to appeal the denial of his motion to suppress. Count 1 charged possession with intent to distribute approximately four kilograms of a mixture containing cocaine hydrochloride, 21 U.S.C. § 841(a)(1), (b)(1)(B), 812 and 18 U.S.C. § 2. Count 3 was a forfeiture count. Mr. Chavira was sentenced to 57 months in prison and three years of supervised release on count 1. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Shortly after midnight on February 14, 2005, Kansas Highway Patrol Trooper Craig Phillips ("the trooper") was patrolling Interstate 70 in Shawnee County, Kansas, when he observed a truck weaving in and out of an eastbound travel lane. The trooper stopped the truck and approached its driver and sole occupant, Mr. Chavira. As he began speaking with Mr. Chavira, the trooper noticed several items: a cell phone on the driver's side visor, an air freshener hanging from the gear shift, a black duffel bag on the passenger's side, and a can of Red Bull (energy drink) on the floor. Mr. Chavira explained that he was tired and had been looking for a place to rest.

The trooper asked for Mr. Chavira's license, registration and insurance

documents. He also requested that Mr. Chavira exit the vehicle and meet him at his patrol car. Mr. Chavira did so, and the trooper examined the documents while engaging Mr. Chavira in conversation about the weather and his travel plans. Mr. Chavira said that he was driving from Denver to St. Louis to visit his cousin for a week. He also told the trooper that he was self-employed as a carpet installer in Denver but that his partner would be able to handle their commitments while he was out of town.

The trooper returned to Mr. Chavira's truck, checking the VIN on the dash. Without asking permission, the trooper also opened the driver's door of the truck, checking the VIN on the doorjamb from outside the passenger compartment. The trooper testified that it was his normal practice to verify that the VIN on the registration document matched the VINs on the dash and the doorjamb. While matching the VIN on the doorjamb, the trooper noticed a second cell phone on the floor of the truck. Checking the doorjamb took approximately fourteen seconds.

The trooper then returned to his patrol car and handed Mr. Chavira's documents to him. He gave Mr. Chavira a warning citation for failing to stay in his lane and explained this violation to him. The men were standing at the passenger side of the patrol car, with Mr. Chavira closer to his truck, and the trooper behind the opened passenger door of his patrol car. To this point, the entire encounter had lasted about seven minutes. The trooper testified that Mr.

Chavira's hands were shaking and he was "quivery." Although the trooper acknowledged that it is common for drivers to be nervous when stopped and that it was a cold night, he thought Mr. Chavira was more nervous than most because his hands continued to shake throughout the encounter.

The trooper then questioned Mr. Chavira further about his travel plans. Mr. Chavira said that he had never been to St. Louis, that his cousin did not know he was coming, and that he did not know his cousin's address. The trooper asked if Mr. Chavira had anything illegal in the truck, and Mr. Chavira said that he did not. The trooper then asked about drugs and firearms. Mr. Chavira shook his head vigorously, indicating that he did not, but looked away when asked if he was carrying cocaine.

The trooper then asked for permission to search the truck, and Mr. Chavira agreed. Lt. Brinker, another Kansas Highway Patrol officer who had arrived sometime earlier, stood with Mr. Chavira while the trooper conducted the search. During his twenty-minute inspection, the trooper discovered a lime in the glove compartment with an "X" shape cut into it, fuel stains on the gas tank, fuel spillage on the inside of the truck bed, and scratches around the bolts that fastened the truck's bed to its frame. He asked for consent to take the truck to the Highway Patrol garage for further inspection, but Mr. Chavira refused.

The trooper then called for a canine. Almost an hour later, Trooper Scott

Morris arrived with Ike. Ike walked around the truck and alerted, and Mr.

Chavira was placed under arrest. A subsequent search of the truck's fuel tank

revealed eight bricks of cocaine with a combined weight of approximately ten

pounds.

Mr. Chavira moved to suppress the cocaine, contending that the search was

the product of an unlawful detention and that his consent to search was tainted by

the unlawful VIN search. The district court found–and the government does not

dispute–that the VIN search violated the Fourth Amendment. See R. Doc. 27 at

9.[1] However, the district court held that the encounter became consensual after

_____

[1] According to the district court, "[u]nder United States v. Caro [248 F.3d 1240 (10th Cir. 2001)], Trooper Phillips impermissibly extended the scope of Chavira's detention by entering his truck to check a secondary VIN against the VIN listed on the registration." R. Doc. 23 at 9. However, New York v. Class, 475 U.S. 106 (1986), makes clear that an officer does not enter the passenger compartment by merely examining the doorjamb VIN plate while standing outside the vehicle. In Class, the officer opened the door to see if there was a VIN plate on the doorjamb and, finding none, reached through the open door and moved papers covering the dashboard VIN. The Supreme Court began by noting that (1) the officer could lawfully require the driver to open the door and exit the vehicle and (2) he could lawfully approach the car and view the dashboard through the windshield. Thus, it reasoned, both locations are "ordinarily in plain view of someone outside the automobile," and not subject to a reasonable expectation of privacy. Class, 475 U.S. at 118 (emphasis added). The Court cautioned that "[i]f the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it." Id. at 119. However, the intrusion into the passenger compartment to move the papers was reasonable because the VIN was not in plain view either on the dashboard or the doorjamb. Id. at 118.
    In Caro, we held that "where the dashboard VIN plate is readable from outside the passenger compartment, that VIN matches the VIN listed on the

the trooper returned Mr. Chavira's documents and issued him the warning citation[2] and that the consent to search was sufficiently attenuated from the search in question to remove any taint. Accordingly, the court denied the motion to suppress. On appeal, Mr. Chavira contends that (1) the trooper unreasonably detained Mr. Chavira after completing the traffic stop and did not permit him to leave, rendering any consent the fruit of an unlawful detention, (2) the trooper lacked reasonable suspicion to question Mr. Chavira after returning his documents, and (3) all evidence recovered from the truck must be suppressed as fruit of an unlawful search of the car for the VIN.

## Discussion

When reviewing the denial of a motion to suppress, we accept the district

registration, and there are no signs the plate has been tampered with, there is insufficient cause for an officer to extend the scope of a detention *by entering a vehicle's passenger compartment* for the purpose of further examining any VIN." 248 F.3d at 1246 (emphasis added). In light of this holding and the Supreme Court's reasoning in Class, we believe it is clear that Caro applies only when (1) the officer has verified the dashboard or doorjamb VIN from outside the passenger compartment and (2) the officer nevertheless physically enters the passenger compartment to check the VIN. There is no unlawful detention under Caro if the officer remains physically outside the car when he examines the VIN on the dashboard, the doorjamb, or both.

[2] The district court also found that the trooper had reasonable suspicion to continue questioning Mr. Chavira after returning his documents. Because we conclude that the encounter was consensual, we need not review this alternate basis for the district court's decision.

court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the government. United States v. Cheromiah, 455 F.3d 1216, 1220 (10th Cir. 2006). However, we review de novo the ultimate determination of reasonableness under the Fourth Amendment because that is a legal conclusion. Id. The facts are largely undisputed. Mr. Chavira bears the burden of establishing a Fourth Amendment violation. Id.

A.    Unlawful Detention

Mr. Chavira argues that the lawful traffic stop ended when his documents were returned, and he was thereafter unlawfully detained because "[t]he trooper's actions and continuous questioning gave no signal to [him] that he actually had permission [to] continue on his way." Aplt. Br. at 13. This detention, he contends, tainted his consent to search. The government concedes that Mr. Chavira was detained when he was stopped, but it maintains that the encounter became consensual once the trooper returned Mr. Chavira's documents and issued him a warning citation.

It is clear that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). Accordingly, we have held that a "driver must be permitted to proceed after a routine traffic stop if a license and registration check reveal no

reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes or the driver voluntarily consents to further questioning." United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000).

However, a traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an "overbearing show of authority." Id. Once the officer has returned the driver's documents, further questioning amounts to an unlawful detention only if the driver has objectively reasonable cause to believe that he is not free to leave. See United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996).

We have held that the return of documents is not sufficient to transform a detention into a consensual encounter if the totality of the circumstances gives the driver an objectively reasonable basis to believe he is not free to go. See United States v. Manjarrez, 348 F.3d 881, 885-86 (10th Cir. 2003). Such a reasonable belief may be supported by the presence of more than one officer, the display of a weapon, the physical touching of the detainee, the officer's use of a commanding tone of voice, and the officer's use of intimidating body language. See, e.g., United States v. Bustillos-Munoz, 235 F.3d 505, 515 (10th Cir. 2000).

Considering the totality of the circumstances, the district court's factual findings do not suggest a coercive show of authority. It is true that more than one

officer was present and that Mr. Chavira was not told that he was free to leave. However, the other officer stayed in his patrol car until after the trooper obtained consent to search and the other officer's presence alone would not indicate to a reasonable person that he was not free to leave. Advising a defendant that he is free to leave is not an essential prerequisite for a consensual encounter, let alone a voluntary consent to search. See, e.g., Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); United States v. Bradford, 423 F.3d 1149, 1158 (10th Cir. 2005); United States v. Elliott, 107 F.3d 810, 814 (10th Cir. 1997). Significantly, from the time the trooper resumed questioning Mr. Chavira about his travel plans until the time he obtained consent to search, Mr. Chavira's path to his vehicle was unobstructed and the trooper was separated from him by the open patrol car door. On this record, we must hold that Mr. Chavira had no objectively reasonable belief that he was not free to leave, and thus his subsequent consent to search was not the product of an unlawful detention.

B.    The VIN Search[3]

Mr. Chavira also argues that the cocaine found in his gas tank is the fruit of the search of his vehicle, specifically the inspection of the VIN located on the

---

[3] The government argues that Mr. Chavira did not preserve this issue for review. In the district court, he objected to the VIN search and claimed that the "information" gained after it was the "fruit of this illegality." The district court apparently considered the issue adequately raised because it ruled on it. We agree.

doorjamb. He maintains that his consent to search did not purge that taint. The government, while conceding that the search was unlawful, as above noted, contends that Mr. Chavira cannot rely upon the fruit of the poisonous tree doctrine because he has failed to demonstrate a nexus between the inspection of the VIN located on the doorjamb and the evidence he now seeks to suppress. We agree. Evidence will not be suppressed as fruit of the poisonous tree unless an unlawful search is *at least* the but-for cause of its discovery. Hudson v. Michigan, 126 S. Ct. 2159, 2164 (2006). Even then, causation is often so attenuated that suppression is not justified. Id.; Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). We have described the but-for relationship as a "factual nexus between the illegality and the challenged evidence." United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000). To establish the factual nexus, at a minimum, "a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." Id.

There is no such evidence here. During a lawful stop and in the midst of a lawful VIN check on the dash, the trooper opened the door of Mr. Chavira's truck and checked the VIN on the doorjamb. The doorjamb inspection lasted fourteen seconds. It uncovered no contraband, and the second cell phone discovered by the trooper during that time has no demonstrated connection to what occurred

- 10 -

next.[4]  Mr. Chavira was not confronted with the fruits of that search or questioned about anything that it revealed.  There is no indication that the trooper would not have requested or obtained consent to search the truck but for the inspection of the VIN on the doorjamb.  We may not suppress evidence without but-for causation.  See Hudson, 126 S. Ct. at 2159 ("[B]ut-for causality is . . . a necessary . . . condition for suppression.").

AFFIRMED.

---

[4] Mr. Chavira contends that the trooper "testified that the second cell phone is what heightened his suspicion . . . ."  Aplt. Reply Br. at 8.  In fact, the trooper testified that his suspicion that Mr. Chavira might have something illegal in his truck was based on (1) Mr. Chavira's explanation that he was going to St. Louis because "he had a slow down at work, but yet his partner was still at home working," (2) the Red Bull, the McDonald's cup and the bag of food, "which led me to believe that he [was] making a nonstop trip," (3) the air freshener because "air fresheners are used . . . to cover odors of drugs," (4) the two cell phones, and (5) the nervousness Mr. Chavira exhibited throughout his interaction with the trooper.  R. Vol. II at 97-98.  The trooper further testified that his suspicion was heightened when Mr. Chavira revealed that he did not know where his cousin lived and that his cousin did not know that he was coming to visit.  Id. at 102-03.  The district court did not believe that the trooper's discovery of a second cell phone was the but-for cause of his decision to ask to search the truck.  Viewing the evidence in the light most favorable to the government, as we must, Cheromiah, 455 F.3d at 1220, we likewise conclude that the second cell phone was not the but-for cause of the vehicle search.