**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RASHAD AKIM LEE,

Defendant-Appellant.

No. 11-6122

(W.D. of Okla.)

(D.C. No. 5:09-CR-00347-C-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

Rashad Akim Lee conditionally pleaded guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). In his plea agreement, Lee preserved his right to appeal two issues: (1) the district court's denial of his motion to suppress evidence arising from an attempted pat-down search during a routine traffic stop; and (2) the district court's determination that

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

his Florida convictions for resisting an officer with violence qualified for enhanced punishment under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM.

## I.  Background

An officer with the Lawton, Oklahoma Police Department was on a routine evening patrol when he observed a car without a properly functioning tag light. The officer initiated a valid traffic stop and proceeded to speak with the car's driver, who provided her driver's license and an expired insurance card.

Three other occupants, one woman and two men, were in the car.  The officer asked for their names and identifications.  Lee, who was seated in the right-rear seat falsely identified himself as Izick Crewford, but did not produce any identification.  Lee did not maintain eye contact with the officer, and focused on his phone during the officer's initial request for information.  Since the stop occurred in a high crime area of Lawton, the officer called for back-up, with two additional officers arriving within minutes.  While the original officer finished writing his citation for the driver and waiting for confirmation as to the identities of the car's occupants, the back-up officers approached the car and advised Lee "numerous times" to keep his hands in plain sight.  R., Doc. 72 at 28.  Lee did not comply, making the officer covering his side of the car "uneasy" and

"uncomfortable." *Id.* Accordingly, the officer asked Lee to step out of the car, where the officer intended to pat him down for the sake of officer safety.

As Lee was stepping out of the car, he refused to comply with the officer's instructions to put his hands on top of his head, and he ran. Two officers gave chase, tackling him approximately five to ten feet in front of the car. As he was being tackled, a gun fell from his pants. Lee continued to struggle with the officers, causing a "pretty lengthy fight in the middle of the street," culminating in the use of a Taser gun in order to gain compliance prior to placing him in handcuffs. *Id.* at 31. Lee was subsequently charged with being a felon in possession of a firearm, in violation of § 922(g)(1).

Lee filed a motion to suppress, arguing that there was no probable cause or reasonable suspicion to justify his detention, arrest, and search. The district court denied the motion, concluding that the traffic stop itself was proper, and as such, officers may order passengers to get out of the car during a lawful traffic stop without any need for particularized suspicion of wrongdoing. R., Doc. 30 at 4; *see also Maryland v. Wilson*, 519 U.S. 408, 414 (1997).

After his motion was denied, Lee entered a conditional guilty plea to the § 922(g)(1) charge, reserving the right to appeal the suppression issue. Prior to sentencing, the government sought an ACCA enhancement based on Lee's three prior qualifying convictions: one for possession of cocaine with intent to distribute and two for obstructing or opposing an officer with violence. Lee

-3-

objected, arguing his Florida state convictions for obstructing or opposing an officer did not fall squarely under the ACCA and a review would demonstrate the convictions were not based on violent behavior. The district court overruled Lee's objections, applied the ACCA enhancement, and sentenced him to 180 months' imprisonment.

## II. Analysis

Lee raises two issues on appeal. First, he argues his conviction should be reversed because the district court erred in denying his motion to suppress evidence. Second, he argues the district court erred in finding that his prior Florida convictions qualified as violent felonies under the ACCA.

### A. Motion to Suppress

Lee first claims the district court erred in denying his motion to suppress, arguing that the officer who asked him to exit the car impermissibly expanded the reasonable scope of an otherwise lawful traffic stop.

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). We accept the district court's factual findings unless those findings are clearly erroneous. *Id.* "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *Id.* But we review de novo the ultimate

determination of reasonableness under the Fourth Amendment. *United States v. Chavira*, 467 F.3d 1286, 1290 (10th Cir. 2006).

Lee does not dispute that the initial traffic stop was lawful—the officer spotted a non-working tag light and properly stopped the car. But he argues the scope of the traffic stop was improperly expanded when one of the officers asked Lee to exit the car. *See United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (the appropriate inquiry once determining the traffic stop was justified at its inception is "whether [the investigative detention] was reasonably related in scope to the circumstances which justified the interference in the first place").

In support of his contention, Lee points to two cases—neither of which has any bearing here. First, he argues our unpublished decision in *United States v. Wilson*, 96 F. App'x 640 (10th Cir. 2004), stands for the proposition that "if during a traffic stop officers commence a separate investigation into activity unrelated to the initial traffic stop, there must be a reasonable suspicion the person . . . committed an offense, [is] committing an offense, or pose[s] a risk to the officer." Aplt. Br. at 13. By way of disputing that he posed a risk to officer safety, he also points to the Sixth Circuit's decision in *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007), for the proposition that broadening the scope of the stop was impermissible because there was no reasonable suspicion Lee was involved in criminal activity or posed a risk to the officers.

But these cases falter on the facts here. Our cases have recognized that "[a]n officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped." *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc). And the Supreme Court admonishes: the "fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." *Maryland v. Wilson*, 519 U.S. at 413. Accordingly, "[o]fficers may take steps to protect themselves and others, provided the measures are not too intrusive and the government's strong interest in officer safety outweighs the motorist's interests." *United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir. 2005) (internal quotation marks omitted).

In determining whether police conduct during an investigatory stop is reasonable, a court "should take care to consider whether police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996). "The risk of harm to both the police and the occupants of a stopped vehicle is minimized . . . if the officers routinely exercise unquestioned command of the situation." *United States v. McHugh*, 639 F.3d 1250, 1261 (10th Cir. 2011) (O'Brien, J., concurring) (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).

It is well-established an officer may order both the driver and passengers to exit the vehicle pending completion of a traffic stop. *Maryland v. Wilson*, 519

U.S. at 414–15. An "officer also may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger." *Holt*, 264 F.3d at 1222. But even so, an officer may perform a pat-down of a driver and any passengers only upon reasonable suspicion that they may be "armed and dangerous . . . [or able to] gain immediate control of a weapon." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998).

Based on these principles, Lee's arguments fail for two reasons. First, the district court correctly found that the officers could order Lee from the car during the course to the stop.

And, second, the officers never conducted a pat-down. As the district court concluded, "once [Lee] exited the vehicle, [the officer] did no more than grab his shirt before [Lee] fled. Because the officer had not yet begun a pat down search . . . there is no need for the Court to consider whether the officers had reasonable suspicion to believe [Lee] was armed and dangerous." R., Doc. 30 at 4. *See also United States v. Bonner*, 363 F.3d 213, 218 (3d Cir. 2004) (finding that "[f]light [by a passenger] from a non-consensual legitimate traffic stop (in which the officers are authorized to exert superintendence and control over the occupants of the car) gives rise to reasonable suspicion"); *United States v. Hampton*, 628 F.3d 654, 658 (4th Cir. 2010) (finding that shoving a deputy in an attempt to flee gives rise to reasonable suspicion for assault).

Lee challenges the district court's reliance on *Maryland v. Wilson*'s holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 U.S. at 415. He claims that case does not apply since the officer only ordered Lee out of the car but none of the other occupants. We know of no authority providing that an officer is required to order no, some, or all occupants from a car as a constitutional matter. The sequence is of no moment. *See id.* at 414 (finding that "the motivation of a passenger to employ violence to prevent apprehension" for a "more serious crime [that] might be uncovered during the stop" justifies the rule).

Even setting aside the district court's finding of no pat-down, the officer could have reasonably believed Lee posed a safety threat. "Officers must be permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (internal quotation omitted); *United States v. Sanchez*, 519 F.3d 1208, 1216 (10th Cir. 2008) ("The purpose of the limited pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.") (internal quotations omitted). The officers testified about Lee's uncooperative behavior during a late night encounter in a high crime neighborhood, and his suspicion that Lee provided a false identity. Lee's failure to keep his hands in plain view added to

-8-

their concern. Upon leaving the car, Lee refused to place his hands on his head, then fled. At that point, the officers were justified in further detaining Lee until the traffic stop was completed. An objective view of these facts leads to the conclusion that a reasonable officer could believe Lee presented a threat to officer safety during the encounter. *See also United States v. Maddox*, 388 F.3d 1356, 1368 (10th Cir. 2004) (finding that situational factors such as the officers being outnumbered, the time of day, and the defendant's "incessant pacing" all help to create reasonable suspicion).

Accordingly, the officer's decision to ask Lee to step outside of the car for the sake of officer safety was reasonable, and the district court's ruling on Lee's motion to suppress was not in error.

**B. ACCA Enhancement**

Lee also argues that his two prior convictions for obstructing or opposing an officer with violence do not qualify as predicate offenses under the ACCA.

Whether a defendant's sentence is properly enhanced under the ACCA is a question of law which this court reviews de novo. *United States v. West*, 646 F.3d 745, 748 (10th Cir. 2011). The ACCA mandates a minimum prison term of fifteen years for any person convicted under § 922(g)(1) if that person has three prior "violent felony" or "serious drug" convictions. 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as a crime that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another

[the "force clause"]; or (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another" [the "residual clause"]. *Id.* § 924(e)(2)(B).

To determine whether a prior conviction qualifies as a violent felony under the ACCA, "we apply a 'categorical approach,' generally looking 'only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.'" *United States v. Scoville*, 561 F.3d 1174, 1176 (10th Cir. 2009) (citing *United States v. West*, 550 F.3d 952, 957 (10th Cir. 2008)). "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the ACCA, without inquiring into the specific conduct of this particular offender." *Id.* (citing *West*, 550 F.3d at 957) (internal quotation marks omitted). If, however, "a criminal statute proscribes conduct broader than that which would satisfy the ACCA's definition of a violent felony or serious drug offense, a federal court may then also look at the charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that falls within the ACCA." *Id.* (citing *West*, 550 F.3d at 957–58). This is the "so-called 'modified categorical' approach." *Id.* (citing *United States v. Zuniga-Soto*, 527 F.3d 1110, 1119–20 (10th Cir. 2008)). It is not necessary "that every conceivable factual offense covered by a statute must necessarily

-10-

present a serious potential risk of injury before the offense can be deemed a violent felony." *James v. United States*, 550 U.S. 192, 208 (2007). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

Lee was twice convicted of violating Florida Statute § 843.01. The statute provides: "Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree." Lee argues the statute is too broad to categorically constitute a violent felony because some conduct—such as "de minimis" force—would not implicate the ACCA's "physical force" requirement. Additionally, Lee argues that the residual clause is not implicated because the statute does not require purposeful, violent, and aggressive conduct.

The district court determined that an offense under this statute is a "violent felony," but did not specify under which clause, either the "physical force clause" (§ 924(e)(2)(B)(i)) or the "residual clause" (§ 924(e)(2)(B)(ii)), that determination was made. On appeal, it is not necessary for us to consider whether the crime falls within subsection (B)(i), because we are satisfied that it falls well within the residual clause contained in subsection (B)(ii). Accordingly, we

-11-

conclude the district court did not err in enhancing Lee's sentence pursuant to the ACCA.

For a crime to constitute a violent felony under the residual clause, it must proscribe conduct "roughly similar, in kind as well as in degree of risk posed" to the enumerated examples preceding the clause. *Scoville*, 561 F.3d at 1180. "Additionally, to qualify as a violent felony under the residual clause, every conceivable offense need not present a serious potential risk of physical injury; instead, the conduct encompassed by the offense, *in the ordinary case*, must create a serious potential risk of physical injury to another." *Id.* (emphasis in original). Moreover, "the residual clause is intended to reach purposeful, violent, and aggressive conduct rather than merely negligent or reckless acts." *Id.* (internal quotation omitted). "Therefore, the question here is whether" resisting, obstructing, or opposing a police officer "is roughly (1) similar in kind, and (2) similar in degree of risk to burglary, arson, extortion, or crimes involving explosives," the enumerated violent felonies. *United States v. Williams*, 559 F.3d 1143, 1148 (10th Cir. 2009).

Resisting, obstructing, or opposing a police officer is not the type of offense that a person might commit by the accidental or negligent use of force. "An assault or battery committed on a peace officer is not equivalent to the same act committed against any other person." *United States v. Smith*, 652 F.3d 1244, 1249 (10th Cir. 2011). "Failure to stop at the command of a police officer is sufficient to support enhancement under the ACCA because it will typically lead

-12-

to a confrontation with the officer being disobeyed or a chase or at least an effort by police to apprehend the perpetrator, which increases the likelihood of serious harm to the officers involved as well as any bystanders." *Id.* (internal quotation omitted). Notably, resisting a police officer is different than normal assault or battery because a police officer is "someone who is required or would reasonably be expected to respond with force to control the situation." *Id.*; *see also Sykes v. United States*, 131 S. Ct. 2267, 2274 (2011) (in the vehicle flight context, "[c]onfrontation with police is the expected result . . . . [i]t places property and persons at serious risk of injury").

Lee relies on the Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), to argue that the residual clause has been substantially narrowed because the Court refused to include "any" or "every" offense which "present[s] a serious potential risk of physical injury to another." 553 U.S. at 142. In *Begay*, the Court concluded that "DUI falls outside the scope of [the residual clause] . . . . [i]t is simply too unlike the provision's listed examples for us to believe that Congress intended the provision to cover it." *Id.* at 143. But *Begay* does hold that the residual clause applies to offenses "typically involv[ing] purposeful, violent, and aggressive conduct." *Id.* at 144. By the plain language of the statute, a conviction under § 843.01 requires that the defendant have *knowingly* and *willfully* resisted, obstructed, or opposed an officer by *offering or doing violence* to the person of that officer. The statute is describing conduct that presents a

serious potential risk of violence—conduct that cannot be done negligently or accidentally.

Lee's argument that the Supreme Court's decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), dictates a different result is similarly unpersuasive. In *Johnson*, the Court concluded that Florida's state statute for battery on a law enforcement officer did not constitute a proper predicate for the ACCA enhancement. *Id.* at 1272–73. But the Court was relying on the force clause and specifically declined to consider whether the conviction qualified under the residual clause. *Id.* at 1274. In the wake of *Johnson*, the Eleventh Circuit has held multiple times that § 843.01 falls squarely within the residual clause and constitutes a violent felony for purposes of the ACCA. *See, e.g.*, *United States v. Nix*, 628 F.3d 1341 (11th Cir. 2010), *cert. denied*, 132 S. Ct. 258 (2011); *United States v. Hayes*, 409 F. App'x 277 (11th Cir. 2010), *cert. denied*, 132 S. Ct. 125 (2011). Relying on both "common-sense analysis," and the "plain language of the statute," the court found that "[c]ommission of the crime requires . . . that the defendant have *knowingly and willfully* resisted, obstructed, or opposed an officer by *offering or doing violence* to the person of that officer." *Hayes*, 409 F. App'x at 279 (internal citations omitted) (emphasis in original); *see also United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003) (finding that "[t]he act of resisting arrest poses a threat of direct confrontation between a

-14-

police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others").

Every court to consider this provision has concluded that it constitutes a crime of violence. In addition to *Hayes* and *Nix* discussed above, the Eleventh Circuit has continued to hold that § 843.01 falls squarely within the ACCA's residual clause. *See, e.g.*, *United States v. Canty*, 431 F. App'x 826 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 532 (2011). Lee has not presented any persuasive arguments to suggest that this court hold otherwise.

In sum, based on the foregoing analysis we see no reason to upset the district court's ruling that the ACCA enhancement was appropriate in this case.

## III. Conclusion

Accordingly, we AFFIRM the district court's denial of Lee's motion to suppress and AFFIRM the district court's application of the ACCA enhancement.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge